Good afternoon, Illinois Appellate Court, First District Court is now in session. The Sixth Division, the Honorable Justice Carl Anthony Walker presiding, case number 22-0830, People v. Darrell Page. Good afternoon, everybody. I'm Justice Carl Walker. I have with me here our presiding justice, Sharon O. Johnson, Sharon Oden Johnson, and Justice Michael B. Hyman. Justice Johnson is the presiding justice of the First District Sixth Division, but she is under the weather. So if she doesn't ask any questions, it's not because she's not interested in the case. It's because she's not feeling well and she's also not able to speak really well today, but she is the presiding justice of our division. So I'd like to start by having each of you to introduce yourselves. Let's start with the appellant. Counsel for the appellant. Good afternoon, David Harris on behalf of the appellant Darrell Page. Okay, Mr. Harris and Ms. Ball. Jessica Ball, Assistant State's Attorney on behalf of the people. Okay, and we generally allow each side 20 minutes for their arguments that includes rebuttal time. So I guess I'd ask you first, Mr. Harris, did you want to leave any time for rebuttal? Yes, five minutes, please. Five minutes. Okay, so you'll take 15 and leave five for rebuttal. We're flexible with the time, though, especially if the justices are still asking questions. We definitely don't stop the justices from asking questions. So if we end up going over that time, it's fine. And if there's a question being asked and you run out of time and you want to close, we'll give you an opportunity to close out as well. So we're pretty flexible. So with that, we'll ask Mr. Harris if you can go ahead and get us started. Thank you. May it please the court, counsel. We've raised two issues in the brief and time permitting, which might be a big ask. I'd like to touch on both of them today, starting with the first issue, because depending on the resolution of that issue, this court might not need to address the Second Amendment claim. We have argued that the record makes clear there was no probable cause to search the car and recover the gun in this case or arrest my client. And therefore, counsel was ineffective for failing to file what would have been a meritorious motion to suppress evidence. And so, Mr. Harris, I just want to ask you to help help us here because I want to know how do we get around guiding people be guiding where this or gating? It depends on how you want to pronounce it is probably gating. But where the Supreme Court says that the record in this case does not contain sufficient information concerning the circumstances of defendant's arrest, from which we could determine whether a motion to suppress would have been meritorious or whether defendant was prejudiced by the trial trial counsel's failure to file a motion to suppress. So it's kind of start there and walk us through this and help us to see what you're arguing here. Yeah, that is not a blanket ruling that these can never be heard on appeal. And the Supreme Court in people versus Veatch has encouraged appellate courts to resolve claims of ineffectiveness on appeal where the record permits. And I think the record does permit here in people versus Henderson, also in the Supreme Court. The court did examine a claim of ineffective assistance for failing to file a motion to suppress where there was no motion filed and felt the record was sufficient, found no probable cause, but then affirmed because there was no suppressible fruit of the arrest. So the Supreme Court has done this case, as I cited in the brief, done this as well. People versus Moore reversed and remanded for a new trial where there was no motion filed. I've cited people versus Bloxton where there was a motion, but counsel argued the wrong theory. Bloxton cited people versus Little, which also reversed and remanded for a new trial with the opportunity to file a motion to suppress. Little cites a few other cases, including Moore, which is in my brief. So tell us how these facts are different than how you believe that the record does establish ineffective assistance of counsel. Tell us tell us how we get there. Yes, I think the record shows a lack of probable cause to invade the car or arrest my client. And I listed a number of reasons in my brief. And this court doesn't need to agree on all of them. I think any one is enough. And several of them the state doesn't even dispute. The state does not just because there's so many. And if you just want what are the most important facts that you think dictate the results you are asking for? Yeah, the most important facts are also ones that aren't disputed, that the police did not know who my client was and therefore could not know if he was legally allowed to own ammunition or possess ammunition or possess a firearm. Just as this court ruled in Horton and Bloxton, that his flight from the scene adds nothing to the probable cause calculus. And the state does not dispute that either, because probable cause needs to exist at the inception of the search, not after. And he didn't leave until after the search began. The state agrees flight is irrelevant here. They said that in their brief. And again, Horton and Bloxton say flight plus a gun is not enough. But here we don't even have flight for the search probable cause. And also the state doesn't dispute that plain view doesn't help it. The video shows, as I pointed out in the brief, the gun was not in plain view. Even if it was, Officer Carroll didn't look before entering the car. Even if he did, the illegality of the item would not be immediately apparent, which is necessary for plain view, both because he didn't know who my client was and could only see an inch of this weapon. So I think these facts, especially where they're not disputed by the state, show there was no probable cause. The state's only argument is that they had probable cause based on the extended magazine, which I addressed in my reply brief, is a factually, legally incorrect argument. The state does list on page 10 of its brief some theorized evidence it might be able to adduce at a hearing had there been a motion to suppress. And I want to make clear that I believe if they're able to prove everything they list in their brief, all this hypothesized evidence, that still wouldn't show probable cause because Officer Carroll was clear. He didn't know who my client was, and he could not know that his weapon possession was unlawful. What about going a step before that? If we agree with your analysis of Easter Day and some other cases with regard to whether it's even an offense in Chicago with regard to a magazine, is that the end of the discussion? No, because they still have to, regardless of the size of the magazine, it could be, the possession could be illegal depending on the person. The person could be forbidden from possessing ammunition. So just like with the firearm, I think the aggravated unlawful use of statutes or unlawful use of a weapon statutes include ammunition. So even if it was a one shot magazine, one bullet, that could be illegal. But isn't that argument saying that they don't know whether, they never testify, nobody testified, Officer Carroll is the one that testified. He didn't say that it was a large type magazine, which is what in the city of Chicago, right? Right. But he didn't know that. And if it wasn't that longer magazine, it doesn't necessarily illegal, is it? I mean, does that mean that anybody walking down the street and an officer sees a magazine, that means they can stop them and search? No, it does not. But again, I believe they could if they know the person is forbidden from possessing ammunition. How did they know that? But in this case, your argument is they didn't know. Let's use the facts in this case. That's what I'm asking you. So you're still saying even though that's the law, as a matter, if we follow that and say that's the law, we still have to go further. And I'm just trying to. Yeah, I feel like I'm arguing as a state's attorney here saying you need to go further. But because ammunition, even possession of a single bullet can be illegal if based on the person, the police would have to know the person is forbidden. And here they could not know that. So my argument. So are you changing your answer to the question whether it would be enough just to say what the law is? I mean, the ineffectiveness of the CASA was there is law. That would have resulted in the motion to suppress being granted. Because the officers did not know anything about him. Because they didn't know anything about him or his right to possess ammunition or a firearm. Correct. That's that's what you say the facts are. Yes, yes. And the state doesn't dispute this. And the record even supports it beyond his testimony. The arrest report lists him as an unknown male. And they didn't run a name check until they arrested him and brought him back to the station. OK, so with all that, again, I'll go back to my question. So how let me know. So what else do you think needs to be done in order for you to win? Even if we follow Easter Day. No, I think following Easter Day and Horton and Bloxton about not knowing whether the person is allowed to possess is all you need. But you need the Horton and Bloxton's description of our discussion of not knowing whether possession is legal. So Easter Day makes clear that the item is not per se illegal. And Horton and Bloxton make clear that the item is not illegal in this case where they don't know who he is. If that distinction makes sense or the combination of those two, those two facts. So and like I said, the state's hypothesized evidence they could come forward with say nothing about knowing whether the possession was illegal. Because they don't suggest they could prove Carroll knew who he was. He said he didn't. The arrest report backs that up. Unknown male. So without knowing him, they could not enter the car. And they also had no reason to arrest him, which, again, the state's only argument is based on the extended magazine. They also say flight is irrelevant for the arrest. And this court has held that in Horton and Bloxton where the flight from an officer combined with seeing a bulge or seeing metal or handle of a gun is not enough to arrest when you don't know that possession is illegal. So we would ask this court to reverse because the motion would have been meritorious. As this court reversed in Bloxton, I believe your honors, Justice Hyman and wrote that with Justice Walker and joining. And the roles were reversed in people versus McClendon, which is not cited in the briefs. But same idea people versus more and little, which reversed even without a motion being filed. We would request that relief. Moving on to the Second Amendment issue and no further questions about. Well, let me with regard to the evidence, the photograph. Number two, there was a poll. Correct. There was a what I'm sorry, but with regard to seeing what was in his pocket when he's on the porch. How would you describe that evidence? You see a few. He just testified as a few inches and the video kind of backs that up and falling out of his pocket for less than a second. If I recall timing it at the time, it was around two thirds of a second before he stuffs it back in his pocket. You can't see a full gun. You can't see a full magazine. He testified. He recognized it as a magazine. Is that is that. Is that human knowledge of how things work and viewing something for that time, even if it's a police officer, is it what I do with it, if anything? I don't think that should be enough. And that was one of the points argued in our brief, especially because the judge found that the court couldn't recognize what it was in that brief clip or the still photograph of it. But that is disputed. The state argues at a hearing, Officer Carroll could testify about his expertise and his ability to recognize this as an extended magazine in that brief blip of a second. And while I disagree that we don't even need to reach that or contemplate a hearing for that because of the other arguments I've made about not knowing who he is. So even if he did recognize it as a magazine, he can't know its possession is illegal. He also would only have a hunch that it was attached to a gun and would not know that the gun was illegal, not knowing who my client is. So for those reasons, there are some additional reasons in our brief. We would ask for relief for ineffective assistance for not filing a meritorious motion because the motion this court would have to find it would have been meritorious to find prejudice. There's no need for hearings on it. This court should reverse because they can't secure a conviction without the gun, without my client's criminal history, which the state does not dispute, would have been suppressible had the arrest been unlawful. Yes. Thank you, Mr. Harris. Miss Ball. Oh, if I may address the second amendment issue or am I. Go right ahead. I'm sorry. I thought you were, you're almost out of time. So you've got to, we'll give you a minute or two on that. Oh boy, a minute or two, Fran. This is a big issue. We've raised as applied. Let me ask you a question. I read your briefs. And there are cases, federal courts are dealing with this as are state courts. Okay. Opinions are coming right and left. Thank you very much for keeping the court in form, both sides. Did a very good job of that. That's appreciated. So there are cases on both sides. So why should we follow the cases that go your way? Because the case is going the other way or wrong. And I would like to explain that. Besides that, I think we're going to hear a better response. Yes. I'll explain why. They fall into, I think, three categories. One rejects these claims in reliance on the footnote in Bruin, distinguishing between shall issue and may issue. Second set rejects claims finding people with felony convictions are not part of the people covered by the Second Amendment and therefore have no Second Amendment protections. And third, there are a couple of cases that get beyond that, reject those roadblocks some courts have found and do the historical analysis Bruin requires. Regarding the footnote, the Bruin court explicitly said they were not approving of all 43 shall issue regimes, 43 states. They said they're subject to challenge. They're just not undone by invalidating New York's may issue a state. And this court in Brooks rejected that argument, I think appropriately in a footnote as well. Also, this case is not about licensing. This isn't about the licensing regime shall issue versus may issue. This is about armed habitual criminal, which has nothing to do with licensing. There's no licensing exception, unlike aggravated unlawful use based on no FOIA or no CCL or even unlawful use of a weapon by a felon, which also has an exception for getting a FOIA card. So do you agree, though, that the first part of the analysis is whether or not Bruin even applies, and that is whether or not the defendant in this case would be included with the people? I think, yes, it's required to examine the text and see if it applies. And the second set of cases look at the people. Now, Bruin did not endeavor to define the people that cited Heller for this. Heller did a thorough examination of the phrase the people, and it looks to how the phrase the people was applied in other parts of the Constitution and the Bill of Rights, like the First and Fourth Amendment, to draw its conclusion that the people refers to an individual right, not a collective right like a militia. And we know the First and Fourth Amendment and other rights do not cease to exist for felons once they've completed their sentence. And Heller drew from that to define the people under the Second Amendment. They went further and said that the people refers to every person who's part of the political community, not an unspecified subset. And my client unquestionably was part of the political community here. He had completed his sentence and punishment for his drug crimes and his voting rights are restored to the extent that matters once he is released from prison. And then Heller went even further and said the Second Amendment right is exercised individually and belongs to all Americans. And Bruin quoted that specifically, all Americans on page 2156 of the decision. So you would so you would argue then because there are some cases that have argued that it applies differently to those who are law abiding citizens that don't have violent felons or violent felonies. So you would argue that that there's no distinction there as well. Is that correct? Right, because they are still all Americans. They're Americans. They're part of the political community. My client was. And when you start narrowing the subset of people to whom the Second Amendment applies to law abiding citizens, you are specifying a subset of the people. And that's expressly what Heller forbids. Heller says it's not in the state. The state filed a motion to set additional authority and they cited our decision where Justice Johnson was the author and Baker. And you're saying that Baker was decided wrong. Respectfully, your honors. Yes, I think it was because adding law abiding to the text to the people in the Second Amendment is specifying a subset. And I was also a part of the Baker panel, just so you know. Yes. Johnson was the author, but you're saying it's wrongly decided. That's what you're arguing. Yes, because it's specifying a subset of people. Heller said you can't do that. Heller says it's not an unspecified subset, so it's not a subset that is not detailed in the text of the Second Amendment. It applies to all Americans. Felony status can make the third step. Right. So at what point then can the legislature say that certain individuals can't possess guns? Aside from, we'll say mental health or mental illnesses. So when it comes to felons, you don't believe that the legislature can ever say that as long as someone has already served their term. Is that your argument? No, I'm saying that they are part of the people. They're still part of the people. Whether regulations in other courts, Heller and Bruin, of course, say there can be certain regulations. And for that, you look to, I call it the third step, the third group of cases that have gone on to Bruin's two-step analysis. First is the conduct covered in here, possessing a handgun outside the home, obviously part of the core, the Second Amendment. And then second, are there sufficient historical analogs? And this is where it becomes the state's burden to show historical analogs with a comparable justification and burden to the law that's being challenged. And that's where they might look to felon disarmament or criminalizing felon possession. And the cases that have done that include Brooks in this court, Smith in the second district, the northern district cases I cited ruling in defendant's favor. They've looked to historical analogs like estate forfeiture, but that says nothing about whether the person can then reclaim their purchase new estate, purchase new possessions and a gun after that. They've more strongly looked at historical laws disarming certain subsets of people based on untrustworthiness. And that would include people unloyal to the crown in England or conversely loyalist to England in the colonies and states, and also enslaved persons and Native Americans. And those laws, importantly, are distinct in both the justification and the burden, and they're not good analogs. The justification is different because those are aimed at maintaining political order, not necessarily public safety. Threats to the crown in England, the distrust of Catholics who are loyal to the pope, threats to the new governments in the colonies and the states, risk of rebellion. You may want to bring it to a close, Mr. Harris, because you're way out of time. I'm going to let you wrap it up there, and then you still have five minutes left for rebuttal. And I would just like to point out that those laws also are distinct in burden because they all had exceptions. Even the disarmament of enslaved persons and Native Americans, as pointed out in the Northern District case of Prince, had exceptions. Armed habitual criminal does not, unlike unlawful use of a weapon by a felon or the no FOIA, no CCL laws. So I think Prince and Griffin get the history much better. The state has not come forward to satisfy its burden by citing laws that disarm nonviolent felons like mine and how the statute was applied to my client. And I would ask this court to find that the Second Amendment forbids his conviction for armed habitual criminal predicated on two prior drug convictions. Thank you. Thank you. And Ms. Ball. Good afternoon again, Your Honors. May it please the court and counsel. With respect to the defendant's first issue, any lack of evidence in the record regarding probable cause is because the issue was not litigated below. It does not mean that probable cause to search the vehicle or to arrest the defendant did not exist. It's just that questions simply weren't asked to fully develop and establish whether or not probable cause existed. And for instance, as we put in our brief, why was Officer Carroll paying close attention to this one specific pod camera? Were the police responding to a tip? What else did they observe on the pod camera? All of those things, all of that information would assist this court in determining probable cause and whether or not a trial attorney was ineffective for choosing not to file that motion. What about if the argument of Easter Day plus Horton or Blackston, then we don't even reach that issue. Easter Day dealt with the Deerfield law, the Chicago law regarding extended magazines or the Cook County law has not been challenged or overruled yet. It exists. It is illegal for anybody, anybody to possess an extended magazine in Chicago. And the defendant does not get to argue negative inferences from the record. The argument that he makes, it's better for him to pursue, it's more appropriate for him to pursue the claim in a post conviction petition. And that's what Henderson says, Beach and Erickson all say. While the record may be fully developed to determine the defendant's guilt or innocence, it was not with respect to the circumstances leading up to and surrounding his arrest. There is minimal evidence in here where this court could say that the evidence supports the finding of probable cause based on that extended magazine. But otherwise, the evidence was there of an extended magazine. I mean, there's in the pocket, didn't know. And by the time I was in the car, I was already was in a firearm. I mean, it wasn't see was the firearm was covered, partially covered by a coat. It was just sticking out. Something was sticking out. So whatever it was, a magazine or a firearm, whatever it was. In any event, the offense, as I understand, is not with the magazine offenses with a firearm. It was charged with. But that's not with respect to the probable cause. Well, the probable cause was supposedly a magazine. Correct. But but nobody again. Even the judge wasn't sure what was going on. And the judge's comments indicate a real doubt as to what the evidence shows. Not with respect to him being found guilty of armed habitual criminal. The question of. But that's not what we're looking at. We're looking at the probable cause. But that probable cause wasn't developed. It wasn't. We can't say that the lack of any evidence of probable cause in this record supports a finding of no probable cause where the issue wasn't litigated below. You can't draw a negative inference from something that wasn't even presented. Yeah, but it's. No, but didn't the trial judge also state that that it could not be seen by. The trial court said that she couldn't tell what the object was. However, Officer Carol identified it as an extended magazine and he can rely on his training and experience to make that identification and the trial court can rely on his observation. And that's what happened here. But we have here that we usually don't have is a complete video. With audio too, and part of it when the police officers arrive. You don't have a complete video because you don't have all of the evidence leading up to the arrest. We have a very limited portion of the pod video that was introduced and very limited testimony that was introduced that all related to his guilt. It did not relate to whether or not probable cause was established for his arrest or the search of the vehicle. So we don't have all of the information that could be necessary to make that determination, which is why it's more appropriate to be presented in a post conviction petition. It's just to horse the record, we, we don't know the information the minimal information that we do have does supporting a finding of probable cause based on the extended magazine. But anything further than that the record. A split second. We're supposed to as taking human experience into account. We're supposed to expect it in a split second. Somebody can tell an officer can tell whether it's a magazine, or it's could be keys I mean, who knows what it is. And it wasn't like just a little bit on a split second, there was nothing that was said that they look back at it, slow it down, or anything else. There's nothing. There's nothing also to say that that is the only basis that the police had that would establish probable cause, because the record is not developed on that point that the Defense Council is trying to take a limited portion of what was on that pod that the state used to support a finding of guilt and turn that into a lack of evidence for probable cause that wasn't litigated below. It's cases that he says where it wasn't litigated below either but the courts reversed, because the evidence was there for the, for the courts to make that determination. Here, we know the evidence we don't we know that we don't have all of the evidence. There's obviously information that preceded on the pod video. We don't know what else was seen. We don't know why the police were focused on this individual pod camera we don't know if there was a tip. We don't know what else they saw the defendant do we don't know the officers training, we don't know the character of the neighborhood. We don't know who saw him return the pot that the extended magazine to the vehicle. These are all legitimate things that would assist a court in determining probable cause. The reason they're not in the record is not because they don't exist you can't make that negative inference. It's because those questions weren't asked, asked, because it wasn't an issue presented below. So the lawyer was ineffective. No, we don't know the rest. No, no, no, I'm saying the lawyer, but there's enough effective we should send it with you're saying if we find is ineffective we should send it back for a hearing. Absolutely not the record here, not support a showing of ineffectiveness. Why everything you say you should, the lawyer should have been asking those questions and that's why I mean to me everything you said supports the ineffectiveness claim, perhaps the off the, the defense attorney already had that information in the police reports in the full pod video and made a strategic determination not to file a fruitless a baseless motion to quash arrest. But that's a speculation, too. I mean, is that, but the video, as I understand in the record the video, it goes on hours, which means that the important part is, is a 20-25 minutes. We don't know what the important part is with respect to probable cause, because that wasn't litigated. So if that was litigated we'd have more in the record on that point that is not to say that defense attorney was ineffective for failing to file a motion to quash arrest that if he had all of this information before him, he made a strategic determination that it would not have won it would not have been meritorious. So this is not a record on which the, you could say that the trial attorney was ineffective. If the defense wants to make that argument, it is more appropriately made. It's really in this case it can only be made in a post conviction petition because that information is just outside of the record. We don't have it to know on what he based that determination. And that's the issue for ineffective assistance counsel if you want to look at the minimal evidence, it does supporting a supportive finding a probable cause. It certainly does not support a finding definitively that this attorney was ineffective. We don't have the knowledge base that the attorney had because the record wasn't developed on this point again not because he was ineffective, but because the issue wasn't litigated very likely because he made a strategic determination not to file a baseless non meritorious motion. This issue is appropriately presented in a post conviction petition, not here, where the record is not developed and Henderson says that very clearly. If there are no other questions on that issue, I would move on to the Bruin issue. And since the parties have filed their briefs in this case, this court has decided a number of post Bruin cases. So let me ask you the same question I figured you might know it was coming. Why should we take the cases that support you and that the cases that support the defendant, because they're the ones that you've decided the Illinois appellate court has unanimously and consistently and repeatedly rejected the various arguments made by the defendant, and criminal statute. And this court has done so at three different points in the Bruin analysis. So following that precedent, your precedent. The question for the court today is that which of those three points, you should affirm the defendants conviction and uphold the constitutionality of the arm to visual criminal statute, as it applies to this defendant. And the first point is without even conducting the Bruin two part analysis, because Bruin recognize the constitutionality of Illinois is void and CCLX, because they are shall issue licensing regimes. And we have, but that's footnote nine, I mean footnote nine says we haven't decided this so that's where they argue footnote nine. Absolutely, but it's not just footnote nine it's the concurring opinions which explain the very limited nature of the holding in Bruin, and that it's specifically tied to New York's may issue licensing regime. The Supreme Court explained that shall issue regime regimes they've carved those out as an exception, because shall issue licensing regimes do not prevent law abiding citizens from exercising their constitutional right to possess and carry guns. And the Supreme Court expressly endorsed criminal background checks to make sure that only law abiding citizens can carry guns. That two part test is really left for may issue regimes, or shall issue states that have requirements that are unduly burdensome. I don't see why we should follow a concurring opinion when the majority opinion says otherwise. It doesn't say otherwise it very clearly limits the holding to the may issue regime that was that issue there, and we have for Illinois appellate court cases that have stated that that's gun Kuykendall and Thompson from the first district and Smith from the fourth. And the licensing regimes are relevant here because they very clearly prevent felons convicted felons from possessing or carrying a weapon. So this court can stop its analysis before it goes into a Bruin two part test, we have for again for Illinois appellate court cases that have held accordingly. But even if you get to the Bruin test, the defendants argument fails at the first step and that's the second point where you can affirm, because felons are not among the people who are protected by the Second Amendment. And we have an additional for Illinois appellate court cases that have held this way, two of which are from the first district. As Justice Walker said Baker is the first. And in that case the defendant made the exact same argument that the defendant makes here, albeit with respect to the UW by a felon statute, but he argued it was unconstitutional as applied to him, because he was a non violent felon whose conduct was limited to simple possession of a firearm, and his underlying felony, just like the defendant here was delivery of a controlled substance. And this court rejected that argument. Justices Johnson, Walker, along with Justice Taylor stated and I quote, the Bruin court could not have been more clear that it's newly announced test applied only to laws that attempted to regulate the gun possession of law abiding citizens, and not balance, like the defendant. Three other Illinois appellate court cases have cited to Baker to also hold that felons, even non violent felons are not law abiding and are not protected by the text of the Second Amendment. Miss ball that there have been courts that have carved out the non violent felons. So in Illinois, they have not in Robinson the first district Smith the second district voice the fourth district and again in Baker, each of those cases held that the that felons whether they are violent or not, are not protected by the Second Amendment are not law abiding people in your, you're familiar with the post brewing case from the Third Circuit Court of Appeals, the range case correct. Yes. Okay. And that's a case that carved out the non violent felons that cases, very easily distinguishable because that defendant. There was an as applied challenge. The defendant was convicted of a misdemeanor offense involving food stamps, and he ended up spending more than a year in prison and it was that prison sentence that prevented him or precluded him from owning a firearm. Here, the defendant is exactly the type of person that should not be carrying a gun. He's a drug dealer with two convictions from 2018. This offense occurred just everybody never had a never had a weapon. No violent offenses, their drug offenses. It depends how you want to phrase violent versus non violent, but I can also say that the line has been drawn by the United States Supreme Court on felonies. The US Supreme Court does not distinguish between violent and non violent felony but that issue now is in play. I mean you have to admit that that apparently it's in play because cases are going other ways. So, I mean, it's an open question. I understand your argument under Illinois law. So far, you know, but also so far the United States Supreme Court has confirmed that felon means felon. And unless and until the Supreme Court says differently. That's what we have here. The defendant is a conviction that may not be totally true Miss Paul, the legislator could also carve it out. That hasn't been done at this point and very clearly and we see that in the void act and the CCL act were felons not preceded by violent or non violent or any type of offense but felons are not permitted to have or possess or carry guns in Illinois, and those statutes are constitutional. This court has said, in light of Bruin, and that is still at the first Bruin step. So you can stop your analysis there, affirm the defendant's conviction because as a convicted felon, he is not protected by the text of the Second Amendment. Even if you get to the second step in Bruin, the defendant's argument still fails. And this is the third point at which you could affirm the defendant's conviction. This court in Brooks, the defendant there again made the same argument as he makes here that the armed habitual criminal statute is unconstitutional as applied to him. He said because he was a non violent felon charged with the underlying offenses delivery of a controlled substance and unlawful use of a weapon by a felon. This court held that there is a historical tradition of firearm regulations that prevent convicted felons, whether dangerous or not, from possessing firearms. Smith from the second district and Smith from the fourth district also held that even if those defendants can get to the second step in Bruin, their arguments fail because there is a historical tradition of barring even non violent felons from possessing firearms. Based on that, following Illinois precedent, again, this court needs to decide at which of those three points in the Bruin analysis to affirm the defendant's conviction and find the armed habitual criminal statute constitutional as applied to him. Again, the first point is without engaging in a fulsome Second Amendment analysis, because Bruin recognize the constitutionality of the Floyd and CC Alex, which prevent felons from possessing and carrying firearms, or at step one of Bruin, because as a convicted felon defendant is not among the people protected by the text of the Second Amendment, or at step two of Bruin, because there is a historical tradition of disarming even non violent felons. If the court has no other questions, the people would rest on its brief and respectfully request that you affirm the defendant's convictions. Thank you. You still have one minute left, but you're done. Mr. Harris. Yes, briefly on the first issue. Again, there's nothing the state could prove here to show that they knew possession in this case was illegal because Carol didn't know him the arrest report back this up saying unknown male. The state theorized about all sorts of other evidence, but the police reports also says they merely suspected he illegally possessed a firearm, and then they went to the scene and didn't do a name check until the station. As for the Second Amendment. So you're saying it's nothing but a hunch, right? Yes. Yeah, a hunch that any possession here was illegal. For the Second Amendment issue, the Ford and CCL are not relevant here because they're not relevant to our individual criminal. You could have a Freud and a CCL card through the appeal process and still be convicted of our individual criminal. And so they're just the analysis there and of the footnote regarding shall issue and may issue licensing regimes says nothing about the criminal regime here, the criminal punishment for my client. There was talk about the people, the phrase the people, and the reading law abiding into the people is drawing this subset of people and Heller says not to do that. Heller says you can't read a subset into the text of the Second Amendment that the Second Amendment doesn't say. The state said that the Supreme Court has drawn a line between felons and misdemeanors possessing weapons and did not say when the Supreme Court has done that. I'm not familiar with that. I think Justice Simon, you're right. This is a live issue. It was brought up in range discussing felons. Justice Barrett, when she was on the Seventh Circuit, wrote that there's no history and tradition of disarming felons in her dissent in Cantor v. Barr, so I don't think that has been decided yet. And then lastly, a discussion of the history. But the state hasn't been talking about Brooks or Smith. These cases have reached it. They don't look at the distinct burden of criminal punishment for possessing a weapon as opposed to whether disarming someone is allowed. We're not challenging the FOID Act or the CCL Act. We're challenging a Class X felony applied to my client by virtue of his two nonviolent prior convictions. So this is a new felony based on his status, and it has no exceptions, again, unlike unlawful use of a weapon by a felon, where it is a defense to have a FOID card if you're able to do so through the appeal process despite a felon, unlike aggravated unlawful use based on no FOID. So what's odd about this case, Mr. Harris, is that, too, just from a factual standpoint, that he was convicted of two felonies of possession on the same day. I believe the two events occurred allegedly on the same day, and he was convicted of them on the same day, two separate felonies. And those are the two felonies that are being used to make him now a Class X offender. Yes, and the case number is in sequence, too, so it doesn't appear it was right at the same time. That is a quick, very quick path to being a Class X offender. So it appeared to me that — and I didn't mean to cut you off, Mr. Harris, but it just appeared to me that there weren't even two incidents, that it was just two charges placed regarding almost the same transaction. Yeah, and the — It wasn't a transaction, I'm sorry, the same possession. Yeah, possibly the same day or close to it. Unlike a Class X by background statute, I believe, which has a sequencing requirement of conviction on one before commit the second, armed individual criminal does not have that safeguard. So it would apply even if the two offenses committed on the same day, and they were charged as two separate offenses here. So that makes him subject to armed individual criminal and punishment for exercising his Second Amendment right to possess a handgun outside the home. I would note the PSI also lists some juvenile cases. The state hasn't relied on them, but I want to point out the PSI doesn't list a conclusion, and the only one that could be violent would be vehicular hijacking. I looked that up because the conclusion is unclear, and the clerk records show that juvenile petition with knowledge before an adjudication. So he doesn't even have any juvenile history of violence. For those reasons, if there are no further questions on either of these issues, I'd ask for this court to reverse my client's conviction for both of the issues raised in the brief and in oral argument. You also had, well, you would have had one minute left, but you're out of time right now. Time just changed. So, well, thank you both. Excellent job. Excellent argument. The briefs were very well written and the arguments have been well done today. So we appreciate that. We appreciate excellence. So thank you to you both. Have a good day. Thank you.